IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MOLLY LaBRECHE,

    Plaintiff,                                                  No. CIV S-06-1280 GGH

    vs.

MICHAEL J. ASTRUE,[1]                                  <u>ORDER</u>
Commissioner of Social
Security,

    Defendant.
_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act").

        For the reasons that follow, plaintiff's motion for summary judgment will be granted, the Commissioner's cross-motion for summary judgment denied, and the case remanded for further proceedings.

---

[1] Michael J. Astrue became Commissioner on February 12, 2007. Accordingly, he should be substituted as defendant in this suit. Fed. R. Civ. P. 25(d)(1). No further action need be taken by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

BACKGROUND

Plaintiff, born September 13, 1967, applied for SSI on December 20, 1999, and DIB on March 10, 2000, alleging disability since January 25, 1999 (Tr. at 65-73, 289-298) due to "bi-polar rapid manic deppression [sic]" making plaintiff "unable to deal with people. Unable to get out of bed or get everyday chores & things done" (Tr. at 88).

Plaintiff's claim was denied initially and upon reconsideration by the Social Security Administration. In February 2002, after a hearing in December 1999, administrative law judge ("ALJ") Antonio Acevedo-Torres found plaintiff not disabled based on findings that despite her severe mental impairment, a personality disorder, she can perform simple repetitive tasks with little public contact, has no physical restrictions, and can therefore perform a significant number of jobs within the national economy as analyzed within the framework of Medical-Vocational Rule 204.00. (Tr. at 15-22). The ALJ also found that any substance abuse was "not severe" because plaintiff "is not currently abusing drugs or alcohol." (Tr. at 17, 19).

The Appeals Council denied plaintiff's request for review. (Tr. at 4-5). Plaintiff appealed the Commissioner's decision to this court.

Meanwhile, pursuant to a separate, presumably SSI, application filed by plaintiff on January 15, 2004, the Commissioner found plaintiff disabled beginning January 1, 2004. (Tr. at 340).

On May 16, 2005, this court reversed the Commissioner's denial of benefits on plaintiff's 1999 and 2000 applications on the ground that "[d]efendant's finding that plaintiff suffers from a personality disorder that does not prevent her from gainful work is not supported by substantial evidence in the record." (Tr. at 332-334). The court found that the ALJ had improperly discredited the opinion of plaintiff's treating psychiatrist, Dr. Martin Leamon, that plaintiff met the criteria for Listed Impairment 12.04 (Affective Disorders), an opinion supported by the report of the consultative psychologist, Dr. Kimberly Stearns, which the ALJ had given "substantial probative weight."

The court reasoned (Tr. at 333-334):

> Defendant gave "substantial probative weight" to the opinion of Kimberly Stearns, Ph.D., who examined plaintiff in May 2000. Tr. 150-154. Dr. Stearns had no medical records to review. Tr. 150. Tests she administered showed plaintiff has a verbal IQ of 83 and a performance IQ of 79, both described as "borderline." These findings were also consistent with depression. She suffered deficits in attention, concentration, delayed recall, visua[l]-motor planning, organizational skills, psychomotor processing speed, and mental flexibility. Dr. Stearns reported that plaintiff could understand, remember, and carry out simple instructions and respond appropriately to usual work situations but she also reported she possessed none of the many other mental abilities for substantial gainful work including working a day or work week without interruption from symptoms. Dr. Stearns diagnosed bi-polar disorder. Dr. Stearns strongly recommended a payee be appointed to receive any funds awarded to plaintiff. In November 2001, Martin Leamon, M.D., the psychiatrist who treated plaintiff since January 1999 for bipolar disorder reported that she had worsened over the last two and one-half years despite aggressive medication management and psychosocial support and that she suffered from an affective disorder that met listing 12.04. Tr. 288. This opinion defendant rejected for lack of "any credible evidence [to] support it." Tr. 19.
>
> Defendant's finding that plaintiff suffers from a personality disorder that does not prevent her from gainful work is not supported by substantial evidence in the record and the decision denying benefits is reversed.

On remand from this court, the Appeals Council concluded that "the record, for the period prior to January 1, 2004, is not clear as to: the severity of the claimant's medical condition; her maximum residual functional capacity; or the impact of the claimant's assessed limitations on her remaining occupational base and that *further development is necessary*." (Tr. at 341 (emphasis added)). The Appeals Council noted that the ALJ had selectively relied upon the findings of consultative psychologist, Dr. Kimberly Stearns, and consultative psychiatrist, Dr. Gregory Young; and that the Commissioner's recent finding of disability commencing January 2004 was based in part on documented low back and neurological problems limiting plaintiff to the performance of "less than sedentary tasks," limitations that should be developed for the time period 1999 to 2004 and factored into the reanalysis.[2]

---

[2] The Appeals Council reasoned in pertinent part (Tr. at 340-341):

The Administrative Law Judge found that the claimant was capable of performing

3

The Appeals Council directed the ALJ to (Tr. at 341-342):

1.     Give further consideration to the treating and examining source opinions and explain the weight given to each, which may include requesting additional information or clarification of their opinions and the assistance of plaintiff's counsel in developing the record.

2.     Further evaluate plaintiff's mental impairment, including documented application of the functional analysis set forth in 20 C.F.R. §§ 1520a and 416.920a.

---

a wide range of work at all exertional levels limited to simple repetitive tasks with limited public contact and therefore she was not under a disability pursuant to the framework of Section 204.00. The Administrative Law Judge considered the claimant's treatment records and reports from consultative psychologist, Kimberly Stearns, Ph.D., who assessed a mild deficit and limited the claimant to work with little public contact; and consultative psychiatrist, Gregory Young, M.D., who opined the claimant was able to perform simple repetitive tasks with limited public contact.

However, Dr. Stearns also assessed the claimant with limited ability to respond appropriately to co-workers and supervisors; deal with changes in routine work setting; maintain attention and concentration; and maintain persistence and pace without interruption from symptoms. Dr. Young also opined the claimant would have difficulty maintaining regular attendance in the workplace; dealing with the usual stress in the workplace environment; accepting instructions from supervisors; and interacting with co-workers. Although the Administrative Law Judge gave substantial weight to the consultative examiners' opinions, he did not provide any rationale for accepting part of their conclusions and rejecting part.

On the subsequent application, the claimant alleged disability beginning January 26, 1999 due to problems with her low back and numbness in her hands and legs. On the initial determination on the claimant's subsequent application, the State agency found that the severity of her impairments limited her to performing simple, routine, less than sedentary tasks with limited public contact. The State agency appears to have relied on progress reports from the University of California Davis Medical Center, an October 7, 2003 MRI, and a February 17, 2004 Neurological evaluation. These records indicate the claimant has a focal central disk protrusion with associated disk dessication and annular tear at L4-5 which was suspected to be abutting and irritating the left L5 nerve root.

Based on its review of the evidence, the Court concluded that further evaluation of the consultative examiners' opinions, as well as treating physician, Dr. Martin Leamon's opinion that the claimant's impairment met the requirements of listing 12.04 was warranted. The Appeals Council concludes that the record, for the period prior to January 1, 2004, is not clear as to: the severity of the claimant's medical condition; her maximum residual functional capacity; or the impact of the claimant's assessed limitations on her remaining occupational base and that further development is necessary.

4

3.      Further consider plaintiff's maximum residual functional capacity with specific references to the evidence.

4.      Obtain supported evidence from a vocational expert if warranted by the expanded record.

In addition, the Appeals Council directed the ALJ to offer plaintiff the opportunity for a hearing and take any further action to complete the administrative record and issue a new decision.[3]

On remand, ALJ Acevedo-Torres notified plaintiff by form letter dated January 5, 2006, that a supplemental hearing would be held February 8, 2006. The ALJ also requested the

---

[3] The Appeals Council's directions on remand provided in full (Tr. at 341-342):

Give further consideration to the treating and examining source opinions pursuant to the provisions of 20 C.F.R. §§ 404.1527 and 416.927 and Social Security Rulings 96-2p and 96-5p, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the treating and examining sources to provide additional evidence and/or further clarification of the opinions and medical source statements about what the claimant can still do despite the impairments through January 1, 2004 (§§ 404.1512 and 416.912). The Administrative Law Judge may enlist the aid and cooperation of the claimant's representative in developing evidence from the claimant's treating source.

Further evaluate the claimant's mental impairment in accordance with the special technique described in 20 C.F.R. §§ 404.1520a and 416.920a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 C.F.R. §§ 404.1520a (c) and 416.920a(c).

Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 C.F.R. § § 404.1545 and 416.945 and Social Security Ruling 85-16 and 96-8p).

If warranted by the expanded record, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Rulings 83-14 and 85-15). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 C.F.R. § § 404.1566 and 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

5

appearance of consultative psychologist Sidney Walter, Ph.D., as a medical advisor and expert, and vocational expert Susan Creighton-Clavel. (Tr. at at 343, 348).

Plaintiff's counsel throughout these proceedings, Jesse Kaplan, appeared at the hearing, but plaintiff did not. Mr. Kaplan stated that he had assumed plaintiff knew of the hearing, but was not certain she had been informed. Mr. Kaplan noted that plaintiff had recently moved and he did not recognize the address used by the Commissioner to provide notice of the hearing. Mr Kaplan further noted that, "because of [plaintiff's] move and because of her mental problems . . . we're pretty far behind in terms of updating the medical record" but had "started the process." (Tr. at 372-373). The ALJ acknowledged there was no record evidence after November 2001 but proceeded with the hearing because this was an "old case" and a "court remand." (Tr. at 373). The ALJ took the testimony of Dr. Walter and the vocational expert and concluded the hearing after Mr. Kaplan indicated "the rest of the record should be coming" (Tr. at 395). No additional evidence was submitted.

The ALJ issued a decision on March 24, 2006 in which he made the following findings (Tr. at 314-315 (emphasis added)):

> 1. The claimant met the insured status requirements of the Social Security Act through September 30, 2001.
>
> 2. The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 C.F.R. §§ 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq.)
>
> 3. The claimant has the following severe impairments: bipolar disorder, personality disorder and polysubstance dependence (20 C.F.R. §§ 404.1520(c) and 416.920(c)).
>
> 4. The claimant's impairments, including the substance use disorder(s), meet section(s) 12.09 and 12.04 of 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d) and 416.920(d)).
>
> 5. Because the claimant's impairments, including the substance use disorder(s), meet the criteria of a listed impairment, the claimant is under a "disability," as defined in the Social Security Act (20 C.F.R. §§ 404.1520(d) and 416.920(d)).
>
> 6. If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work

activities; therefore, the claimant would continue to have a severe impairment or combination of impairments.

7. If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d) and 416.920(d)).

8. If the claimant stopped the substance use, the claimant would have the residual functional capacity to understand, remember and carry out simple one or two-step instructions. The claimant also has the ability to relate and interact with others with limited co-worker and public contact and *she can adapt to stresses common to a normal work environment. The claimant also can maintain concentration, attention, persistence and pace and she can maintain regular attendance.* In other words, the claimant retains the ability to perform simple, unskilled work.

9. If the claimant stopped the substance use, the claimant would be unable to perform past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

10. The claimant was born on September 13, 1967 and was 32 years old on the alleged disability onset date, which is defined as a younger individual age 18-44 (20 C.F.R. §§ 404.1563 and 416.963).

11. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964).

12. Transferability of job skills is not material to the determination of disability due to the claimant's age (20 C.F.R. §§ 404.1568 and 416.968).

13. If the claimant stopped the substance use, considering the claimant's age, education, work experience, and residual functional capacity, there would be a significant number of jobs in the national economy that the claimant could perform (20 C.F.R. §§ 404.1560(c), 404.1566, 416.960(c), and 416.966).

14. Because the claimant would not be disabled if she stopped the substance use (20 C.F.R. §§ 404.1520(g) and 416.920(g)), the claimant's substance use disorder(s) is a contributing factor material to the determination of disability (20 C.F.R. § § 404.1535 and 416.935). Thus, the claimant has not been disabled within the meaning of the Social Security Act at any time through the date of this decision.

Thus, although the ALJ had previously found, on the same record, that plaintiff's substance abuse was "not severe" because she "is not currently abusing drugs or alcohol" (Tr. at 17, 19), he subsequently found that plaintiff's substance abuse was not only severe but met the

\\\\\

\\\\\

criteria for a listed impairment[4] and was a contributing factor material to any other finding plaintiff is disabled.[5]

The Appeals Council denied review[6] and plaintiff again sought review before this court.

Plaintiff contends the ALJ erred by (1) failing to comply with the Appeals Council September 7, 2005 order of remand, including further development of the record; (2) failing to find plaintiff's borderline intelligence a severe impairment; (3) improperly rejecting the opinion of plaintiff's treating psychiatrist; (4) making an unsubstantiated residual functional capacity determination; and (4) improperly discrediting plaintiff's subjective complaints.

LEGAL STANDARDS

To demonstrate disability under the Social Security Act, a claimant must establish inability to engage in "substantial gainful activity" because of a "medically determinable physical or mental impairment" that "has lasted or can be expected to last for a continuous period of not

---

[4] It remains a curiosity that the Commissioner retains Listed Impairment 12.09 (presumptive impairment based upon substance abuse disorders) since Congress has determined that substance abuse is not a basis for disability. However, as this court has previously noted, the problem may be more theoretical than real because Listing 12.09 incorporates listed impairments for other mental disorders.

[5] In 1996, Congress amended 42 U.S.C. § 423 to eliminate drug and alcohol abuse as bases for finding disability. See Contract With America Advancement Act of 1996 § 105, 42 U.S.C. § 423(d)(2)(C) ("An individual shall not be considered to be disabled for the purposes of this subchapter if alcoholism or drug abuse would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled.") The ALJ herein followed the appropriate analysis for determining whether alcoholism or drug abuse is a contributing factor material to the determination of disability, as set forth in Bustamante v. Massanari, 262 F.3d 949 (9th Cir. 2001); see also, 42 U.S.C. S 423(d)(2)(C); 20 C.F.R. §§ 404.1535(a), 416.935(a). The ALJ first determined, pursuant to the Commissioner's five-step inquiry, whether plaintiff is disabled when the impact of substance abuse is considered. Only after finding plaintiff disabled did the ALJ determine whether the applicant would still be disabled if she stopped using drugs or alcohol.

[6] Although designated in the index (Court Index Transcript, p. 1, at line 2), the Appeals Council's action denying review of the administrative law judge's March 2006 decision is not included in the record. The cited ruling is the Appeals Council's 2002 denial of review. (Tr. at 4-5, 329-330).

less than 12 months." 42 U.S.C. § 423(d)(1)(A). The disabling impairment must be so severe that, considering age, education, and work experience, the claimant cannot engage in any kind of substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A). The Commissioner makes this assessment by a five-step analysis. First, the claimant must not currently be working. 20 C.F.R. § 404.1520(b). Second, the claimant must have a "severe" impairment. 20 C.F.R. § 404.1520(c). Third, the medical evidence of the claimant's impairment is compared to a list of impairments that are presumed severe enough to preclude work; if the claimant's impairment meets or equals one of the listed impairments, benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the claimant can do her past work, benefits are denied. 20 C.F.R. § 404.1520(e). Fifth, if the claimant cannot do her past work and, considering the claimant's age, education, work experience, and residual functional capacity, cannot do other work that exists in the national economy, benefits are awarded. 20 C.F.R. § 404.1520(f).

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

\\\\\
\\\\\

DISCUSSION

The Appeals Council found further development of the record "necessary" and directed the ALJ to assess the period through January 1, 2004, with particular emphasis on reconsidering and weighing the opinions of plaintiff's treating and examining physicians, particularly their assessments of limitations in plaintiff's abilities to respond appropriately to co-workers and supervisors, deal with changes in routine work setting, and maintain attendance, attention, concentration, persistence and pace without interruption from symptoms; and to assess plaintiff's "maximum residual functional capacity" in light of the Commissioner's 2004 finding that plaintiff's low back impairments and numbness in her limbs limit her to "less than sedentary tasks." However, except for the testimony of the medical and vocational experts, the ALJ rendered his decision based on the same record as that presented at the first administrative hearing, current only to November 2001. While plaintiff's counsel did not meet his burden of presenting medical evidence in support of plaintiff's alleged disabilities, the ALJ did not meet his independent duty to develop an adequate record before rendering a second decision.

The claimant has the burden of presenting medical evidence demonstrating disability. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1512(a), (c), and 416.912(a), (c); Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001)). Moreover, the Ninth Circuit recently held that the claimant bears the burden of proving that substance abuse is not a material contributing factor to her disability. Parra v. Astrue, 481 F.3d 742 (9th Cir. 2007). Plaintiff's counsel clearly failed to meet these burdens, by failing to insure plaintiff's presence at the supplemental hearing (or objecting to the ALJ's decision to proceed with the hearing despite plaintiff's absence), and by failing to supplement the medical record. Plaintiff's counsel was not even aware that plaintiff had been awarded benefits based on a subsequent application (Tr. at 396), a matter clearly set forth in the Appeals Council remand order.

Nonetheless, an ALJ has an independent duty to develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the

evidence. Mayes, 276 F.3d at 459; Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001);[7] Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996). The ALJ also has an independent duty to contact reporting medical sources to resolve ambiguities and adequately evaluate the evidence. 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1); Social Security Ruling SSR 96-5p ("For treating sources, the rules also require that we make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us").

The ALJ was specifically informed by the Appeals Council that further development of the record was necessary. With respect to plaintiff's physical capacity, the Appeals Council identified two pertinent medical reports readily available to the ALJ pursuant to plaintiff's 2004 application. The ALJ noted nonetheless at the supplemental hearing that, "There is no evidence in the record of any physical condition" (Tr. at 385) and, in his written decision, "After careful consideration of the entire record [up to November 2001], the undersigned concludes that the claimant retains the residual functional capacity to perform a wide range of work at all exertional levels" (Tr. at 309). Not only do these findings directly contradict the Appeals Council, but they are inconsistent with the medical record before the ALJ, specifically, the December 2000 report of consultative psychiatrist, Dr. Young, that plaintiff sustained a 1985 motorcycle accident in which she injured her neck, resulting in back and

---

[7] As the Ninth Circuit summarized in Tonapetyan, 242 F.3d at 1150 (citations and internal quotations omitted):

> The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered. This duty extends to the represented as well as to the unrepresented claimant. . . . The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect her own interests. Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry. The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record.

shoulder problems, and for which she has been prescribed Vicodin since 1997 (Tr. at 231) (a matter that should also have impacted the ALJ's substance abuse findings).

With respect to plaintiff's mental capacity, Dr. Walter, the medical expert, explicitly stated that the medical record was unclear regarding the scope and timing of plaintiff's substance abuse and did not provide a clear assessment of plaintiff's bipolar and personality disorders absent substance abuse; that further diagnosis and information about these matters was warranted. (Tr. at 376-383). The medical expert conceded that his conclusion plaintiff would have fewer functional restrictions[8] absent substance abuse was based largely on his "experience" that "if you reduce alcohol and drugs, a person's mental functioning is improved." (Tr. at 382). The ALJ improperly relied on the medical expert's essentially theoretical distinctions to support his conclusion plaintiff would not be disabled absent substance abuse.

The ALJ then relied selectively on the medical record to further substantiate his conclusion. Cf., Holohan v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001) (selective reliance on medical reports without regard to the "overall diagnostic picture" is error). The ALJ rejected the opinion of Dr. Stearns, to which he had previously given "substantial probative weight," because "she was not aware of the claimant's substance abuse" at the time of her interview. (Tr. at 310). Similarly, the ALJ rejected the opinion of Dr. Young because "at the time of the evaluation the claimant was actively engaged in substance abuse" and Dr. Young had noted

---

[8] Dr. Walter nonetheless compared plaintiff's functional limitations when under the influence of substance abuse, and when not (acknowledging that his opinion was based largely on his general knowledge about the effects of substance abuse), as follows: Restrictions of Daily Living (mild under either circumstance); Social Functioning (between mild and moderate under either circumstance); Concentration (markedly impaired under the influence of substance abuse, moderate without); Decompensation (a "3" when under the influence of substance abuse, a "2" when not). (Tr. at 375, 380-383). As set forth in 20 C.F.R. §§ 404.1520a and 416.920a, the ALJ is required to assess the degree of a claimant's functional limitations due to mental impairment based on the following areas: Activities of daily living; Social functioning; Concentration, persistence, or pace; and Episodes of decompensation. A five-point scale is used to rate the degree of limitation in the first three functional areas ("None, mild, moderate, marked, and extreme"). A four-point scale is used to rate the degree of limitation in the fourth functional area ("None, one or two, three, four or more).

plaintiff's symptoms "were likely attributable to her ongoing substance abuse." (Tr. at 311).  (In fact, Dr. Young opined only, "It is also *possible* that some ongoing substance abuse may be precipitating *some* of her symptoms that may be causing her to appear more hypomanic, currently" (Tr. at 234, emphasis added)).  Finally, the ALJ implicitly rejected the letter opinion of plaintiff's treating psychiatrist, Dr. Leamon, that plaintiff's bipolar disorder meets the criteria for Listed Impairment 12.04 (Tr. at 288), by finding that Dr. Leamon's "progress notes support a determination that without consideration to polysubstance abuse, the claimant can perform work activities." (Tr. at 312).  Neither Dr. Leamon's progress notes nor his opinion draw a clear distinction in plaintiff's mental status based on the presence or absence of substance abuse.

In essence, the ALJ made the same mistake held to have been committed by the undersigned in Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998), by making a medical assessment on the impact of alcohol and drug use on plaintiff's underlying impairments.  The ALJ is not in a position to opine what plaintiff's medical condition would be in the absence of drug or alcohol use; his reliance on the equivocal testimony of Dr. Walter and isolated portions of the medical record was in error, and his decision plaintiff would not be disabled absent substance use is not based on substantial evidence.

The failure of the ALJ to obtain sufficient information to factor out the effects of plaintiff's substance abuse also undermines his pivotal findings that, absent substance abuse, plaintiff is able to maintain attendance, concentration, attention, persistence and pace in the work environment, and interact satisfactorily with supervisors and coworkers.  These abilities are influenced not only by plaintiff's bipolar and personality disorders but her borderline intelligence, which the ALJ addressed only inferentially.  The failure of this assessment is underscored by the ALJ's credibility assessment, which this court views as inadequate given the consistency of plaintiff's testimony at the first hearing with the findings of the reporting medical sources that plaintiff has inherent difficulties staying on task and maintaining a schedule.  For example, the record as a whole appears to support plaintiff's testimony she lost custody of her

two youngest children to her ex-husband due to her difficulties in maintaining a functional home routine, that she often felt confused and performed inadequately in a work environment and was afraid to ask for help due to her problems with anger and social interactions, and that when depressed she will stay in bed for up to two weeks. (Tr. at 38-41).

The ALJ glossed over these matters in his decision, stating that the record was adequate to render a determination on all issues and therefore plaintiff was not an "essential witness" at the supplemental hearing. (Tr. at 304). The ALJ did not address this matter at the hearing, as required under McNatt v. Apfel, 201 F.3d 1084 (9th Cir. 2000), to determine whether postponement of the hearing would be appropriate. McNatt applied 20 C.F.R. § 404.957, as construed by the Commissioner in former HALLEX (Hearings, Appeals, and Litigation Law Manual) provision I-2-4-25(D) (entitled "Claimant's Representative Appears at Hearing Without the Claimant"), to hold in part that an ALJ must determine whether the claimant is an "essential witness for a proper determination of the case" before deciding whether to proceed with the hearing and issue a decision or postpone the hearing so the claimant may appear. Id., 201 F.3d at 1088. Under the current version of HALLEX § I-2-4-25(d),[9] the ALJ may proceed with the

---

[9] HALLEX provision I-2-4-25(D), "Claimant's Representative Appears at Hearing Without the Claimant-- Constructive Waiver of Right to Appear at Hearing " (2005), provides in full:

If a claimant's representative appears at a scheduled hearing without the claimant:

1. The ALJ may determine that the claimant has constructively waived the right to appear at the hearing if the representative is unable to find the claimant, the notice of hearing was mailed to the claimant's last known address, and the contact procedures of 20 CFR §§ 404.938 and 416.1438 have been followed.

If the hearing includes expert witnesses, the ALJ may choose to proceed with the hearing, accepting the testimony of the witnesses and allowing the claimant's representative to question the witnesses and make arguments regarding the claimant's application.

The ALJ should advise the claimant's representative that a Notice to Show Cause will be issued asking the claimant why he or she did not appear, and why a supplemental hearing should be held. If the claimant fails to respond to the

14

hearing to obtain the testimony of expert witnesses, as the ALJ did here, but he must also determine whether the circumstances meet the requirements for a constructive waiver of plaintiff's right to appear and, if not, issue an order to show cause why plaintiff did not appear, providing plaintiff the opportunity for a further hearing. There is no evidence the ALJ made any effort to make an initial determination of constructive waiver or issue an order show cause. The ALJ's "nonessential witness" rationale for making a decision after the scheduled hearing was based only on the ALJ's unsupported assessment the record was "adequate."

The ALJ's reliance on a patently inadequate medical record, and the testimony of the medical and vocational experts who relied on that record, and his unsupported conclusion plaintiff was a nonessential witness to these proceedings, rendered his assessment of plaintiff's residual functional capacity – both mental and physical – unsupported by substantial evidence in the record. Accordingly, this matter must again be remanded for a thorough evaluation of plaintiff's entitlement to DIB and SSI based upon her alleged disabilities for the period January 25, 1999 to January 1, 2004.

CONCLUSION

For the forgoing reasons, plaintiff's motion for summary judgment is granted. The Commissioner's cross-motion for summary judgment is denied. The Clerk of Court shall enter judgment in favor of plaintiff pursuant to sentence four of 42 U.S.C. § 405(g). This case is remanded to the Commissioner for further proceedings consistent with this order.

\\\\\

---

Notice to Show Cause or fails to provide good cause for failure to appear at the scheduled hearing, the ALJ may then determine that the claimant has constructively waived his or her right to appear for a hearing, and the ALJ may issue a decision on the record.

2. If the claimant provides good cause for failure to appear, the ALJ will offer the claimant a supplemental hearing to provide testimony.

NOTE: If a representative appears at a scheduled hearing without the claimant, dismissal is never appropriate.

The court must note that this second remand is not completely to be laid at the doorstep of the ALJ in this case. Plaintiff's counsel had the opportunity to acquire and present the relevant medical evidence for the time period at issue; yet he did not do this, nor is there a valid explanation of why this did not happen. If a motion for attorneys' fees is made, the undersigned will consider counsel's inactivity. Counsel is again reminded that *plaintiff* has the initial burden of producing medical evidence.

DATED: 9/27/07

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
U.S. MAGISTRATE JUDGE

GGH5:LaBreche1280.ss